UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UMEKKI L. GREEN | CIVIL ACTION NO. 07-1819 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LSU HEALTH SCIENCE CENTER, SHREVEPORT, SWANSON CORRECTIONAL CENTER FOR YOUTH | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 16] filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU").[1] LSU claims that it is entitled to judgment as a matter of law on Plaintiff Umekki L. Green's ("Green") various claims of race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. The Motion for Summary Judgment is unopposed. For the following reasons, LSU's Motion for Summary Judgment is GRANTED.

## I.     FACTUAL BACKGROUND

On July 19, 2004, Green, an African-American female, was hired as a graduate social worker at the R.L. Redd Swanson Center for the Youth ("Swanson"). Because Green had not yet passed the Graduate Social Worker Exam, she was classified as a licensed provisional graduate social worker. All social workers in Louisiana are required to be currently licensed. Green's job description also required that she be licensed by the State Board of Social Work Examiners.

---

[1] Plaintiff Umekki L. Green erroneously named Defendant as "LSU Health Science Center Shreveport, Swanson Correctional Center for Youth" in her Complaint. [Doc. No. 1].

On November 30, 2005 and December 28, 2005, Kandie Rymer ("Rymer"), the Assistant Business Manager at Swanson, notified Green that her provisional license was going to expire on December 31, 2005. [Exh. B, ¶¶ 7–8]. Despite these warnings, Green allowed her license to expire.

On January 4, 2006, Rymer notified Green that she was required to be licensed to work as a social worker and that she would need to obtain some type of temporary certification before she could renew her license. [Exhs. B, ¶ 9; B-4]. Rymer requested that Green provide proof of certification by the next day, January 5, 2006. However, Green failed to do so.

On January 5, 2006, Green was informed that she could not continue to work without a license, in violation of law, and that she would be placed on suspension without pay until she could show proof of her licensure.

Green subsequently renewed her provisional license and returned to work at the end of January 2006. Upon her return to work, she appealed her suspension without pay to the State Civil Service Commission ("Commission"), which ruled that suspension without pay was an inappropriate sanction under the Civil Service Rules. After the First Circuit Court of Appeal, State of Louisiana, affirmed the Commission's ruling, LSU paid Green backpay for the days that she had been suspended without pay.

Green continued to work in the same position until she resigned on March 22, 2006.

On October 11, 2006, Green filed a Charge of Discrimination ("Charge") with the EEOC. [Exh. 22]. Green alleged discrimination based on "race" and alleged that the earliest and latest act of discrimination took place on "January 5, 2006." In the body of the Charge, Green stated:

> I.  On January 5, 2006, I was suspended from my position of of [sic] Social Worker I.

> I. The reason given for my suspension was that my license had expired.
>
> III. I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The EEOC mailed Green a Dismissal and Notice of Rights letter on July 31, 2007. [Exh. 23].

On November 2, 2007, Green filed her Complaint [Doc. No. 1] against LSU, alleging that she was discriminated against on the basis of race, retaliated against for engaging in protected activity, subjected to a hostile work environment, constructively discharged, and discriminated against on the basis of sex.

On October 10, 2008, LSU filed a Motion for Summary Judgment [Doc. No. 16].

Green did not oppose the Motion for Summary Judgment.[2]

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

A motion for summary judgment cannot be granted simply because there is no opposition. An unopposed motion seeking summary judgment shall be granted "if appropriate." FED. R. CIV. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its

---

[2]When she filed her Complaint, Green was represented by counsel. Subsequently, her counsel withdrew, and she proceeded *pro se*. [Doc. No. 20].

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

However, a claimant's failure to file an opposition and statement of contested material facts requires the Court to deem the moving party's statement of uncontested material facts admitted for purposes of the instant motion. Local Rule 56.2W.

**B.     Exhaustion**

LSU claims that Green failed to exhaust all of her claims, except her claim for race discrimination based on her suspension without pay.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief" by "filing an administrative charge with the EEOC." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). "Only after administrative efforts terminate may the employee sue the employer in federal court." *Id.* "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Id.* The "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). Accordingly, courts should "construe[] an EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of

4

discrimination.'" *McClain*, 519 F.3d at 273 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Courts must employ "a 'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *Id.* (quoting *Sanchez*, 431 F.2d at 466). "In sum, a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (quoting *Sanchez*, 431 F.2d at 466) (alteration in original).

LSU contends that the following claims were not included in Green's EEOC Charge and, based on the information provided in her Complaint and deposition, these claims could not be reasonably expected to grow out of the Charge: harassment by Kaye Clark ("Clark"), the Business Manager at Swanson, who scrutinized Green's attendance on September 20, 2005; race discrimination by Clark when she took several Caucasian employees to lunch on April 27, 2005; a reduction in Green's hourly pay rate and suspension without pay in retaliation for testifying in a civil service proceeding in September 2004 on behalf of a secretary who was employed at Swanson; a pattern and practice of sex discrimination by superiors who "overtly and covertly utilized race, sex and reprisal to deny or stifle [Green's employment] opportunities," which ultimately led to her resignation; and "mean looks" from Clark based on race upon Green's return to work in January 2006, which ultimately led to her resignation. [Doc. No. 1, ¶ XIX].

A fair reading of Green's Charge is that she claims she was suspended without pay because of her race. Nowhere does she mention the litany of claims regarding sex discrimination and harassment and constructive discharge recited in her Complaint. The only two claims that could have been expected to grow out of her Charge are that she was suspended without pay because of her race and/or in retaliation for testifying on someone else's behalf. *See Gates v. Lyondell*

5

*Petrochemical Co.*, 06-20813, 227 Fed. Appx. 409, 2007 U.S. App. LEXIS 11370, at *2 (5th Cir. May 15, 2007) (holding that the plaintiff's "hostile environment and unequal pay claims could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment or unequal pay").

The Court, therefore, GRANTS LSU's Motion for Summary Judgment on all of Green's claims for failure to exhaust, except her claims that she was suspended without pay (1) because of her race and/or (2) in retaliation for testifying on someone else's behalf.

**C.    Race Discrimination**

LSU claims that Green cannot prevail on her claim that she was suspended without pay because of her race. Title VII prohibits an employer from discriminating against any person in the terms and conditions of her employment because of her race. *See* 42 U.S.C. § 2000e-2.

In her Complaint, Green alleged that "non-minorities are treated differently than Blacks in similar situations." [Doc. No. 1, ¶ XXV]. The only act alleged by Green that could constitute the basis of a race-based disparate treatment claim is her allegation that she was suspended without pay on January 5, 2006.[3]

To establish a *prima facie* case of disparate treatment under Title VII, Green must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) other similarly situated employees were treated more favorably. *See Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). If Green establishes

---

[3]The other alleged acts of racial discrimination included in Green's Complaint occurred more than 300 days before Green filed her EEOC Charge of Discrimination, or prior to December 15, 2005, and are, therefore, time-barred under Title VII. *See* 42 U.S.C. § 2000e-5(e)(1).

6

a *prima facie* case, the burden shifts to LSU to offer a legitimate, non-discriminatory reason for suspending her without pay. *Id.* If LSU offers a legitimate, nondiscriminatory reason, the burden then shifts to Green to raise a genuine issue of material fact through circumstantial evidence that "(1) [LSU's] reason is pretext, or (2) [LSU's] reason, while true, is only one reason for its conduct, and another motivating factor is [Green's] protected characteristic," her race. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

The Court finds that LSU has met its burden of showing that Green cannot establish a *prima facie* case. Green has not shown that similarly situated Caucasian employees received more favorable treatment. In her deposition, Green alleged that Sara Watson, a Caucasian, was employed as a social worker at Swanson and continued to work there after her license was revoked. The undisputed evidence shows that Sara Watson resigned on October 29, 2004, before her license to practice social work was revoked on August 20, 2005. [Exh. F].

Even if Green could establish a *prima facie* case, LSU has produced a legitimate and non-discriminatory reason for suspending her without pay—she was no longer licensed to work as a social worker, and it would have been a violation of state law to allow her to continue to perform social work. *See* LA. REV. STAT. § 37:2709 ("No individual shall practice social work in the state unless the individual holds a current, valid license, certificate, provisional certificate, or registration issued by the board in accordance with this Chapter."). Although LSU's decision to suspend her without pay was deemed erroneous under the Civil Service Rules, Green has offered no evidence that LSU's reason was a pretext for discrimination, that race motivated its decision, or that the proffered reason is false. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was

made with discriminatory motive.").

The Court, therefore, GRANTS LSU's Motion for Summary Judgment on this claim.

**D.      Retaliation**

LSU claims that Green cannot prevail on her claim that she was suspended without pay on January 5, 2006, because she testified in a civil service proceeding in September 2004 on behalf of a secretary who was employed at Swanson. Title VII prohibits an employer from discriminating against an employee because she has opposed an employment practice that is unlawful under Title VII or testified in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a).

Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a *prima facie* case of unlawful retaliation, Green must show: (1) that she engaged in protected activity; (2) that she was subjected to a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the materially adverse employment action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Assuming, *arguendo*, that Green's testimony in a state proceeding is protected activity under Title VII, there is no evidence of a causal connection between her September 2004 testimony and her January 5, 2006 suspension. Temporal proximity may be sufficient to prove the plaintiff's *prima facie* case if the protected act and the materially adverse employment action are "very close" in time. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007). Here, the more than fifteen-month gap between Green's testimony and her suspension is insufficient to establish a causal connection. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding that a five-month

lapse, without more, does not support an inference of a causal link).[4]

The Court, therefore, GRANTS LSU's Motion for Summary Judgment on this claim.

## III. CONCLUSION

For the foregoing reasons, LSU's Motion for Summary Judgment [Doc. No. 16] is GRANTED, and Plaintiff Umekki L. Green's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 10th day of November, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4]Green also alleged that her hourly pay rate was reduced from $12.00 per hour when she worked at Swanson as a student/intern to $11.97 per hour when she finished school and was hired at Swanson as a graduate social worker in retaliation for testifying in September 2004. [Doc. No. 16-2, p. 193:9–12]. Even if this claim of retaliation was timely, Green was hired as a graduate social worker on July 19, 2004, prior to her September 2004 testimony. Therefore, she cannot establish a causal connection between her testimony and her rate of pay.

9